[Fuller v. Whitlock.]

# Fuller v. Whitlock.

*Bill in Equity to enjoin Sale under Execution.*

1. *Evidence of intention not admissible; objection thereto may be waived.*—Evidence of one's intention is not admissible; but where intention is the fact to be ascertained, the objection to proving it by the testimony of the person himself may be waived, and when so proven the evidence is legal and relevant

2. *Homestead exemption; abandonment.*—Temporary absence from a homestead for less than 12 months is not an abandonment, so long as there exists in the owner the *animus revertendi.*

3. *Same.*—When, after a claim of homestead exemption has been duly made and filed, the owner during a temporary absence leases the premises for a period less than one year, his right to such exemption is not forfeited, provided the *animus revertendi* continued to exist; and a sale of the premises within 12 months from the time of his leaving is a conveyance of the homestead.

4. *Same; sale of, can not be impeached by creditors.*—A sale of property, exempt as a homestead, can not be impeached by creditors, and this, notwithstanding the sale may have been fraudulent, and made to hinder, delay or defraud the creditors.

5. *Res inter alios acta*—Proceedings in a contest of a homestead exemption between an execution creditor and his debtor, are *res inter alios acta* as to the debtor's grantee, who files a bill to enjoin a sale under the execution.

APPEAL from Chancery Court of Cullman.

Heard before the Hon. THOS. COBBS.

The bill in this case was filed by the appellant, Mrs. E. L. Fuller against the appellees; and sought to enjoin the sale of a portion of a lot which she had purchased, and to quiet her title thereto. The facts of the case are sufficiently stated in the opinion. Upon the submission of the cause, on pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayed, and ordered the temporary injunction dissolved, and dismissed the bill. Complainant appeals, and assigns as error the final decree of the chancellor.

ROBERT C. BRICKELL and GEORGE H. PARKER, for appellant.—After the declaration and claim of homestead has been duly made and filed, a temporary quitting of the homestead for a period of not more than 12 months at any one time, is not an abandonment.—Code of 1876, § 2843; Code of 1886, § 2539; *Hines v. Duncan*, 79 Ala. 112. The evidence in this case

shows that the leaving of the homestead was temporary, with the intention to return to it. Property which is exempt from sale as a homestead can be sold and conveyed at any time, and of such sale the creditors of the grantor can not complain.— *Clark v. Spencer,* 75 Ala. 57; *Alley v. Daniel,* 75 Ala. 403; *Fellows v. Lewis,* 65 Ala. 343; *Lehman v. Bryan,* 67 Ala. 558; *Wright v. Smith,* 66 Ala. 514; *Hines v. Duncan,* 79 Ala. 112; Thompson on Homestead, §§ 404-12, 435. While it is not competent for a witness to testify as to his intention, an objection as to such testimony may be waived, and when so waived the evidence is legal and relevant.— *Shutte v. Thompson,* 15 Wall. 160; 1 Index Dig. U. S. Sup. Ct. Rep. p. 149, §§ 1520, 1529. The proceedings in the contest of exemption between Whitlock and Beckert are *res inter alios acta* as to the complainant in this case.

HEAD J.—In 1882, Chas. A. Beckert owned and occupied, as his homestead, lot 403, in the town of Cullman, Ala. In March of that year he removed from Cullman to Decatur, Ala., and was there engaged in the service of the United States. On October 30th, 1882, he and his wife conveyed the lot by deed to H. P. McIntire for the recited consideration of $500.00. On April 20th, 1883, McIntire conveyed the lot by deed to Mrs. Ida M. Beckert, who was the wife of said Charles A., for the recited consideration of $500.00. On November 16, 1886, Mrs. Beckert and her husband, the said Charles A., conveyed by deed to the complainant, Mrs. E. L. Fuller, a part of said lot, for the recited consideration of $400.00, and Mrs. Fuller went into immediate possession and occupation of the part so purchased, and so continued up to the filing of this bill. In November, 1881, the appellee, W. L. Whitlock, obtained a judgment in the Circuit Court of Cullman County, against said Charles A. Beckert for the sum of $437.60 and costs, upon which execution regularly issued, on December 23d, 1881, to the sheriff of that county, and thereafter other executions were regularly issued, without the lapse of a term, until November, 1883, when one was issued and levied by the sheriff on the said lot number 403, as the property of the defendant therein, the said Charles A. Beckert. On November 27, 1877, Beckert, who then owned and actually occupied the lot as his homestead, made his declaration, in writing, verified by his oath and signed by him, wherein he described the said lot and claimed the same as his homestead, and as exempt from levy and sale, under execution or other process for the collection of debt, and filed the same in the office of the judge of probate of

[Fuller v. Whitlock.]

Cullman County for record; and on the 7th day of December 1877, the same was duly recorded. Again on the 28th day of February, 1882, he made and filed and had recorded, in the same office, another and similar declaration and claim of homestead in and to said lot. Whitlock, the plaintiff in execution, contested these claims of exemption by affidavit duly made, under the statute, and the matter of the contest depended in court until May 1, 1887, when upon trial in the Circuit Court, judgment was rendered in favor of the plaintiff, Whitlock, condemning the lot to the satisfaction of the execution; which judgment it seems, was subsequently affirmed by this court on appeal.—*Beckert v. Whitlock*, 83 Ala. 123. Thereafter, on the 17th day of January, 1888, an order of sale and a *fieri facias* issued on said judgment to the sheriff of said county, who levied the latter on said lot, and was proceeding to advertise and sell the same under the processes in his hands, when this bill was filed by Mrs. Fuller to enjoin the sale of that portion of the lot she had purchased, and to protect and quiet her title to the same. At no time prior to the sale and conveyance of the lot to McIntire, on Oct. 30, 1882, nor at that time, was it worth more than two thousand dollars, the limit of value allowed under our homestead laws.

The case presents but a single question. Was the lot in question still the homestead of Charles A. Beckert when he conveyed it to McIntire, or had he, theretofore, abandoned it as a homestead? It is not denied that he actually occupied it as the home of himself and family up to March, 1882, and that during that month, he left the place and went to Decatur and engaged, as a gauger, in the service of the United States. Section 2843 of the Code of 1876, which was in force at the time of these transactions, reads as follows : "When a person has a right of homestead under this chapter, or any other section relating to exemptions, a temporary quitting or leasing the same for a period of not more than twelve months, at any time, shall not be deemed to be an abandonment of it as his homestead ; but if he shall make and file the declaration and claim, as herein provided, it shall remain subject to same right of homestead as if he had continued in the actual occupancy thereof." It is shown without dispute that Beckert did not lease the place for a period of more than twelve months, but on the contrary that he rented a part only of the house to a tenant, by the month, and kept his furniture and effects in another part of the house. It is shown also that he had not been absent from the place as long as twelve months when he sold to McIntire.

[Fuller v. Whitlock.]

The question then arises, was his quitting the premises temporary or permanent, which means, did he quit with the intention of returning, within twelve months, and again occupying the place as a home, or did he intend his removal to be permanent, or to extend beyond a year? The respondents have relieved this question of difficulty by taking and introducing the depositions of Mr. and Mrs. Beckert, which is practically the only testimony, in their behalf, touching the question. Directly responsive to interrogatories propounded by respondents, Charles A. Beckert testified as follows : "I did not abandon my homestead rights in that lot until the last portion of it was sold to H. P. McIntire by me. When I left Cullman in May, 1882, I went to Decatur, Ala., in the service of the U. S. Government. I said that I should always consider Cullman my home. I rented a part of the lot containing the house to Otto Cullman. I rented to him by the month. I lived in Decatur something over a year, but was preparing my house in Cullman for a residence and re-occupation during that time." And on cross-examination he testified : "I did regard said lot as my home, and did have some property in the house even until after the sale to H. P. McIntire. I did say when I went to Decatur in May, 1882, that I was going to stay there temporarily, and I considered Cullman my home. I do not remember now whether I so stated to Mr. Armbenster or not. It was my intention to return to Cullman as shown by my return. I did so swear on the trial of the contest of exemptions in the Circuit Court of Cullman County." And Mrs. Beckert, responding to the respondent's interrogatories, testified as follows : "He did not abandon his homestead on said lot. He said that he should consider Cullman as his home, and would return there. The reason of his moving from said property in Cullman is a private family matter and not connected with this suit. The part of the lot containing the house was rented to Otto Cullman. I do not know for what length of time it was rented. He lived in Decatur, Ala., over a year in the service of the U. S. Government, but during the latter part of the time he was preparing the house in Cullman for occupancy as a residence." S. L. Fuller, who was examined by complainant, testified : "On the 30th October, 1882, he" (Charles A. Beckert) "was also in possession" (of the lot in question) "holding and using it as his homestead, occupying a portion of it with his household goods and William Emnel occupying another part of said lot as the tenant of said Beckert. I know that he occupied it as such tenant for he was my bar keeper at the time. On or about

[Fuller v. Whitlock.]

this date Chas. A. Beckert told me in person that he claimed said lot as his homestead, that he had only left it temporarily, and was at the time having some repairs put on the same. ¡ · · On . or about March 18, 1882, Chas. A. Beckert got married and left the same night on a wedding trip to Decatur, and on account of some trouble with his grown children growing out of said marriage, he remained there some days and while there, received the appointment of United States gauger, and remained at Decatur for some time in that business, living in the house of Mr. C. C. Sheets, or kept house for him, after which he returned to Cullman and occupied the house and lot in question." Mrs. Fuller's testimony corroborated that of her husband, S. L. Fuller, above stated. What we have stated is practically all the evidence shedding light on the question under consideration. We have seen the respondents themselves introduced the emphatic testimony of Beckert and his wife as to the former's intention when he left the place and went to Decatur. It is true, under our rulings, that evidence of one's intention is not admissible against the objection of the party against whom it is sought to be introduced, the rule being that intention must be established as an inference from the conduct of the party and the circumstances surrounding him. It seems that nearly all the States of the Union hold the contrary doctrine. For a full discussion of the subject, see note to *Gardon v. Woodward,* 21 Am. St. Rep. 310. But whether our rule be the better one or not, we have no doubt that where intention is the fact to be ascertained, objection to this mode of proving it may be waived, and the evidence, when so introduced, is legal and relevant. Taking this case, then, in the condition we find it, we are forced to conclude that Beckert did not intend to abandon and forfeit his homestead, and that his quitting the premises was temporary within the meaning of the statute. Such being the case the lot continued to be his homestead until he sold and conveyed it to McIntire in October, 1882.

It is immaterial to inquire whether that sale was made with the intent to hinder, delay or defraud creditors. Being exempt from the payment of debts, the owner could make any disposition of it he chose, and creditors could not complain. This is the well settled doctrine of this court.— *Fellows v. Lewis,* 65 Ala. 343 ; *Lehman v. Bryan,* 67 Ala. 558 ; *Wright v. Smith,* 66 Ala. 514 ; *Alley v. Daniel,* 75 Ala. 403 ; *Hines v. Duncan,* 79 Ala. 112 ; *Clark v. Spencer,* 75 Ala. 49, and cases there cited. Besides, if the property was subject to levy and sale at all, the lien of Whitlock's execution was

in full force at the time of the sale to McIntire, and was thereafter preserved down to the filing of this bill. That lien, if it had existed, was all efficient to protect the rights of Whitlock, without considering the question of fraud. But the property was the homestead of the debtor, and there was neither execution lien upon it, nor right in any creditor to attack its sale as fraudulent.

It is obvious that the judicial proceedings in the matter of the contest of the claim of exemptions were *res inter alios acta* as to the complaint.—*Beckert v. Whitlock*, 83 Ala. 123.

The decree of the chancellor is reversed, and a decree will be here rendered granting the relief prayed by the bill.

Reversed and rendered.